UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NewMarket Pharmaceuticals, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>VetPharm, Inc.,<br><br>       Defendant. | Civil Action No. 19-cv-6405<br><br>Hon. Charles J. Siragusa<br><br><br>Oral Argument Requested |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT'S MOTION TO STAY OR DISMISS ACTION**

                      **HARRIS BEACH PLLC**
                      Douglas A. Foss
                      Kyle D. Gooch
                      99 Garnsey Road
                      Pittsford, NY 14534
                      T: 585.419.8800
                      F: 585.419.8801
                      dfoss@harrisbeach.com
                      kgooch@harrisbeach.com

                      *Attorneys for Defendant*

**TABLE OF CONTENTS**

Page

Table of Authorities ................................................................................................................. ii

Introduction .............................................................................................................................. 1

Argument .................................................................................................................................. 1

    I.      This action should be stayed until NewMarket has paid VetPharm's attorneys' fees in connection with the Missouri Action .......................................... 1

    II.     NewMarket's tortious interference allegations are untimely .................................. 3

    III.    New York law applies to NewMarket's claims ........................................................ 4

    IV.    NewMarket has not stated a claim for tortious interference with contract or business relations .................................................................................... 6

    V.     NewMarket has not stated a claim for misrepresentation ......................................... 8

    VI.    NewMarket has not stated a claim for negligence .................................................... 9

    VII.   NewMarket should not be given any further attempts to replead .......................... 10

Conclusion .............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 8

*Gayle v. Nat'l R.R. Passenger Corp.*,
  701 F. Supp. 2d 556 (S.D.N.Y. 2010) ......................................................................... 9

*GlobalNet Financial. com, Inc. v. Frank Crystal & Co.*,
  449 F.3d 377 (2d Cir. 2006) ........................................................................................ 5

*Horowitz v. 148 S. Emerson Assocs. LLC*,
  888 F.3d 13 (2d Cir. 2018) .......................................................................................... 2

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
  40 Misc. 3d 643 (Sup. Ct. N.Y. County 2013) ............................................................ 4

*Nazeri v. Missouri Valley College*,
  860 S.W.2d 303 (Mo. 1993) .................................................................................... 6, 7

*Pasqualini v. MortgageIT, Inc.*,
  498 F. Supp. 2d 659 (S.D.N.Y. 2007) .......................................................................... 3

*Pasternack v. Lab. Corp. of Am. Holdings*,
  27 N.Y.3d 817 (2016) .................................................................................................. 5

*Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2006 WL 6589918 (D. Conn. July 26, 2006) .............................................................. 2

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*,
  322 S.W.3d 112 (Mo. 2010) .................................................................................... 8, 9

*Stehno v. Sprint Spectrum, L.P.*,
  186 S.W.3d 247 (Mo. 2006) ........................................................................................ 6

*TBA Global, LLV v. Proscenium Events, LLC*,
  114 A.D.3d 571 (1st Dep't 2014) ................................................................................ 4

*Wagner v. Mortg. Info. Servs., Inc.*,
  261 S.W.3d 625 (Mo. Ct. App. 2008) ......................................................................... 8

**Statutes**

CPLR 215(3) ................................................................................................................................. 3

**Rules**

Federal Rules of Civil Procedure:
   Rule 9(b) ................................................................................................................................ 8

   Rule 11 ................................................................................................................................ 10

   Rule 12(b)(6) ...................................................................................................................... 10

   Rule 41(d) .................................................................................................................. 1, 2, 10

**Other Authorities**

19A N.Y. Jur. 2d Conflict of Laws § 2 ....................................................................................... 4

Restatement (Second) of Torts § 533 .......................................................................................... 8

## INTRODUCTION

For nearly three years, VetPharm and NewMarket have been embroiled in a dispute over NewMarket's nonpayment of invoices for work VetPharm completed. That dispute is drawing to a close, with a decision on the parties' arbitration expected by year's end. That ought to put an end to NewMarket's multi-year, multi-forum, scorched-earth legal campaign against VetPharm. But NewMarket does not want peace or finality. It wants to keep its claws in VetPharm a while longer, dragging out the parties' dispute with ever more baseless allegations and legally meritless claims.

The tort claims asserted by NewMarket in this action cannot withstand a motion to dismiss. Much of what NewMarket alleges is reputational harm—that VetPharm "spoke negatively" about NewMarket to a third party in March 2016—which is barred by a one-year limitations period. And, as shown below, each of NewMarket's remaining claims[1] fails to state a viable claim for relief.

But before the Court reaches these issues, it should first require NewMarket to reimburse VetPharm for the costs and attorneys' fees that it incurred in connection with an earlier action filed by NewMarket in the Western District of Missouri. NewMarket's tactics—filing in an inconvenient forum, ignoring jurisdictional and procedural defects, and waiting until VetPharm's motion to dismiss was fully briefed before filing a voluntary dismissal—led to a waste of effort by VetPharm.

## ARGUMENT

**I.     This action should be stayed until NewMarket has paid VetPharm's attorneys' fees in connection with the Missouri Action.**

Where, as here, a plaintiff files duplicative actions in two federal districts, Rule 41(d) gives courts wide discretion to shift costs—including attorneys' fees—to ensure that the defendant is not

---

[1] NewMarket withdrew its claims for injurious falsehood, breach of confidence, and prima facie tort.

disadvantaged by the plaintiff's maneuvering. Mem. 10–11. There can be no dispute that NewMarket filed a third-party action in the Western District of Missouri, refused to dismiss it when confronted with procedural and jurisdictional defects, waited until VetPharm's motion to dismiss was fully briefed, and then filed a duplicative action in this court. *See* Foss Decl. Exs. 9–12, 14.

There is no merit to NewMarket's suggestion that it was doing VetPharm a favor by refiling the suit. NewMarket was made aware of the defects in its original third-party action before it had even formally served VetPharm with process. Yet, it refused to withdraw the suit. By waiting until VetPharm's motion to dismiss was fully briefed, NewMarket assured that VetPharm would bear the full brunt of legal fees in connection with its motion in Missouri. It then refiled the same claims in this court, requiring VetPharm to file and brief a new motion to dismiss, imposing extra costs and months of delay. That is precisely the type of "vexatious litigation" conduct that Rule 41(d) is designed to address. *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 23 (2d Cir. 2018).[2]

This case is unlike *Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2006 WL 6589918 (D. Conn. July 26, 2006). There, the plaintiff originally filed in Delaware, then refiled the action in Connecticut, where the parties were already engaged in a related litigation, allowing consolidation of the two actions and furthering judicial economy. *Id.* at *6. NewMarket's actions, by contrast, have needlessly multiplied suits. While it could have asserted these tort claims in the parties' arbitration earlier this year, or added them to the case already pending in the District of New Jersey, NewMarket instead filed a *fourth* action against VetPharm in a *fourth* venue. Its actions did not support either judicial economy or the speedy and inexpensive resolution of the

---

[2] NewMarket's professed good faith is undermined by its CEO's stated desire to "crush [VetPharm chief executive Denni Day] under [his] foot." Foss Reply Decl. Ex. 1.

2

parties' dispute. Quite the opposite—NewMarket has taken every opportunity to multiply proceedings and impose unnecessary burden on both VetPharm and the court system. An award of costs is warranted to ensure that NewMarket bears the costs of its own maneuvering.

## II.     NewMarket's tortious interference allegations are untimely.

In determining which limitations period to apply to a claim, New York law looks past the label assigned by the plaintiff and looks to the substance of the allegations. *See, e.g.*, *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 669–70 (S.D.N.Y. 2007) (claim labeled as one for tortious interference with prospective business advantage was, in substance, a defamation claim subject to a one-year limitations period under New York law); *see also* Mem. 13–14.

Here, the substance of NewMarket's allegations is that it suffered a reputational harm based on alleged statements made by VetPharm to VetBridge. The basis for the claim is NewMarket's vague allegation that VetPharm "spoke negatively" to VetBridge about NewMarket, which allegedly caused VetBridge to back out of providing additional funding to NewMarket's product development project. Compl. ¶¶ 5, 34–42, 52–65. NewMarket itself describes its allegations in reputational terms, suggesting that VetPharm "impugn[ed] NewMarket's management of the project and its financial stability" (Compl. ¶ 5) and "disparaged NewMarket" (Opp. 2). Indeed, NewMarket asserted a claim for "injurious falsehood" based on the same allegations that VetPharm made "disparaging comments about NewMarket [that] would likely induce … VetBridge not to do business with NewMarket." Compl. ¶¶ 82–86. Thus, NewMarket's own words confirm that the gravamen of its claim is based on an alleged reputational injury, which is subject to a one-year limitations period. CPLR 215(3).

Even if the three-year limitation period applies, NewMarket's claims are still untimely. As NewMarket acknowledges (Opp. 18–19), tort claims accrue at the time of the alleged injury. NewMarket erroneously suggests that its claims for tortious interference did not accrue until March

3

2017 when VetPharm terminated its contractual relationship with NewMarket—nearly a year after the allegedly tortious statements were made. Opp. 19. But the termination of the parties' contract has nothing whatsoever to do with the injury allegedly incurred by NewMarket as a result of the alleged statements to VetBridge, which purportedly caused VetBridge to "cease funding the Project." Compl. ¶ 55. From the face of NewMarket's complaint, it is evident the complained-of communications from VetPharm to VetBridge occurred in the latter half of March 2016. Compl. ¶¶ 37–42; 2018 Day Decl. ¶¶ 13–14. NewMarket could have brought its claims immediately based on the alleged harm to its relationship with VetBridge, but it waited more than three years to do so. Accordingly, NewMarket's claim is time barred.

**III.    New York law applies to NewMarket's claims.**

Unable to defend the viability of its claims under settled New York law, NewMarket tries to save its claims by urging the application of Missouri law. But NewMarket fails to meet its burden to show that Missouri law is applicable.

The first step in applying a choice-of-law analysis is to determine whether there is "an actual conflict between the laws of the jurisdictions involved." *TBA Global, LLV v. Proscenium Events, LLC*, 114 A.D.3d 571 (1st Dep't 2014). "For an actual conflict to exist, the laws in question must provide different substantive rules in each jurisdiction that are relevant to the issue at hand and have a significant *possible* effect on the outcome of the trial." *Id.* at 572 (internal quotation marks omitted). If the party asserting a conflict of law does not meet its burden of demonstrating a meaningful, substantive difference that is relevant to the outcome, a New York court will dispense with the choice-of-law analysis and apply New York law to the suit. *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 40 Misc. 3d 643, 650–51 (Sup. Ct. N.Y. County 2013); *see also* 19A N.Y. Jur. 2d Conflict of Laws § 2.

NewMarket fails its initial burden. While it purports to point out differences between New

York and Missouri law with respect to certain issues (Opp. 10–11), NewMarket fails to show that any such differences are material or relevant to the claims in this case or to the arguments raised by VetPharm in its motion to dismiss. For example, VetPharm has shown that NewMarket's claim for fraud fails under New York law because the New York Court of Appeals has squarely held that allegations of third-party reliance are insufficient as a matter of law. Mem. 17 (citing *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (2016)). NewMarket fails to show that Missouri would allow a fraud claim based on third-party reliance. Opp. 11. Because NewMarket has failed to show that the alleged differences in law between New York and Missouri are material to the issues in this case, the Court should apply New York law.

Even if there were a genuine conflict, New York choice-of-law principles require courts to apply the law of the jurisdiction with the greatest interest in the litigation. *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006). As NewMarket acknowledges, where conduct-regulating laws are at issue, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Opp. 10, quoting *GlobalNet*, 559 F.3d at 384.

Applying that rule here, the state with the greatest interest is New York, the state from which VetPharm's alleged tortious conduct emanated. *See GlobalNet*, 449 F.3d at 385 (tort claims against defendant were governed by the law of New York, where the defendant maintained its principal place of business, and the place where the alleged negligent actions occurred). Missouri, by contrast, has little interest in this dispute. Neither VetPharm nor NewMarket are located there. It was neither the state where the allegedly tortious conduct occurred nor the state where the alleged injury was felt. Its connection to this dispute is fortuitous—VetBridge, a third party to this dispute, happens to be located there.

### IV. NewMarket has not stated a claim for tortious interference with contract or business relations.

NewMarket does not attempt to defend the viability of its claims for tortious interference with contract or business relations under New York law, implicitly acknowledging that the claims must be dismissed if the Court applies New York law. *See* Mem. 14–16.

Even if Missouri law applied, NewMarket's tortious interference claims fail. As under New York law, an element of the tort is "a breach induced or caused by defendant's intentional interference." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 316 (Mo. 1993). NewMarket has not alleged any breach because NewMarket never reached an agreement with VetBridge about the terms of additional funding for the project. Rather:

- The contract between VetBridge and NewMarket limited VetBridge's financial contribution to the project at $4 million, which VetBridge had fulfilled by late 2015 (Foss Decl. Ex. 2, VetBridge Pet. ¶ 8, 11);

- While NewMarket alleges that it had begun negotiating a potential amendment to the VetBridge funding agreement in early March 2016, NewMarket never alleges that it actually reached any agreement with VetBridge to supply additional funding (*see* Compl. ¶¶ 29–33);

- VetBridge was already wary about advancing any more money to NewMarket, and at least one member of VetBridge was demanding, by March 11, 2016, an audit of NewMarket's expenses (Dkt. 10-3 at pp. 11–12); and

- VetBridge then conducted a preliminary audit showing $1.6 million of misappropriations and overcharges; NewMarket refused to allow a full audit; transferred assets to other entities in violation of its agreement with VetBridge; and VetBridge sued NewMarket for breach of contract (Dkt. 10-4, ¶¶ 22–25).

Given these facts, NewMarket cannot claim that it had a protectable business expectancy in the "draft" amendment it was negotiating with VetBridge. The only agreement in place at the time was the initial funding agreement that capped VetBridge's contribution at $4 million—funding that it had already provided. NewMarket's mere hope that VetBridge would agree to provide more funding is not sufficient, particularly given that VetBridge was already in the process of uncovering

NewMarket's $1.6 million breach of the initial funding agreement. *Cf. Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 251 (Mo. 2006) ("A business expectancy that is contrary to the terms of a contract on which the expectancy depends is unreasonable."). Thus, NewMarket cannot allege a necessary element of its claim—that VetPharm caused VetBridge to breach any contract or protectable business expectancy.

NewMarket's tortious interference claim also fails a second requirement of Missouri law. As NewMarket acknowledges (Opp. 12, 14), "absence of justification" is an element of the tort. As the Missouri Supreme Court has explained, "if the defendant has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." *Nazeri*, 860 S.W.2d at 317. If an economic justification exists, the plaintiff must allege improper means "that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Id.*

Here, VetPharm had an economic justification for contacting VetBridge. NewMarket owed VetPharm more than $900,000 in unpaid invoices, and NewMarket blamed the delay in payment on its "investors," which turned out to be VetBridge. Dkt. 1-1, 2018 Day Decl. ¶¶ 8–9. VetPharm's sole purpose in reaching out to those investors was to let them know that it had not been paid a lot of money and that the projects were being stopped due to that non-payment. NewMarket has not alleged that VetPharm used any improper means—allegations that are necessary to overcome VetPharm's economic justification. The vague allegation that VetPharm "spoke negatively" about NewMarket (Compl. ¶ 5) is not enough to allege independently wrongful means.

Equally fatal to NewMarket's claims is its failure to plausibly allege facts suggesting that VetPharm *intentionally* interfered with NewMarket's funding relationship with VetBridge. As

7

noted above, VetPharm's economic interest in contacting the investors was solely in getting paid for its work on the projects. Thus, its interests were aligned with NewMarket when it came to securing additional funding from VetBridge. NewMarket has not alleged any non-conclusory facts from which it could be plausibly inferred that VetPharm intended to interfere with NewMarket's funding relationship.

NewMarket's reliance on *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), is misplaced. While the Court acknowledged that Rule 9(b) allows intent to be pleaded "generally" as compared to the otherwise heightened pleading standard for fraud, the Court squarely held that the rule does not "give … license to evade the less rigid—though still operative—strictures of Rule 8." *Id.* at 686–87. The *Iqbal* decision stands for the proposition that a plaintiff cannot—as NewMarket has done here—"plead the bare elements of his cause of action" without providing sufficient non-conclusory facts to plausibly state a claim for relief. *Id.* at 687; *see also id.* at 677–78.

## V. NewMarket has not stated a claim for misrepresentation.

NewMarket concedes that its claims for fraudulent and negligent misrepresentation fail under New York law. *Compare* Mem. 17–18 (addressing deficiencies under New York law), *with* Opp. 15–16 (relying solely on Missouri law).

Even if Missouri law applies, NewMarket's claims still fail. An essential element of fraud or negligent misrepresentation under Missouri law is reliance *by the plaintiff* on the alleged statement. In other words, Missouri law requires that the party relying on the reputation and the party suing for injury to itself be one and the same. *See Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 132, 134 (Mo. 2010) (listing fraud elements as including "the hearer's reliance" and "the hearer's consequent and proximately caused injury"). Where, as here, the defendant's alleged statement is not made to the plaintiff directly but to a third party, the plaintiff must show that (1) the speaker intended the statement to be repeated or communicated to the plaintiff and

8

(2) the plaintiff justifiably relies on the indirect statement to its detriment. *See Wagner v. Mortg. Info. Servs., Inc.*, 261 S.W.3d 625, 640 (Mo. Ct. App. 2008) (citing Restatement (Second) of Torts § 533). Here, NewMarket does not allege that it relied on any of VetPharm's alleged statements. Its allegation that "[t]he Investors relied on these statements" (Opp. 16) is insufficient to establish the justifiable reliance element of either fraud or negligent misrepresentation under Missouri law.

NewMarket's misrepresentation claims are also deficient because it fails to allege that it suffered any loss that was proximately caused by VetPharm's alleged statements to VetBridge—a common requirement of New York and Missouri law. *See* Mem. 17–18; *Renaissance Leasing*, 322 S.W.3d at 132, 134. While NewMarket suggests that it has been damaged because it failed to obtain FDA approval for its product, such an injury has no connection to VetPharm's alleged statements.[3]

## VI. NewMarket has not stated a claim for negligence.

NewMarket's claim for negligence is based on the same factual allegations as its claim for negligent misrepresentation. *Compare* Compl. ¶¶ 74–81, *with id.* ¶¶ 92–96. In both instances, the gravamen of the claim is that VetPharm allegedly injured NewMarket by making vague representations to VetBridge about "the data." To state a viable claim for relief, NewMarket must therefore plead the elements of negligent misrepresentation (which, as shown above, it has not done). It cannot avoid dismissal simply by retitling its claim as one for ordinary negligence.

In any event, NewMarket has not stated a viable claim for negligence. "Under New York law, the elements of negligence are (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) a showing that the breach of that duty constituted a proximate cause of the injury." *Gayle v. Nat'l R.R. Passenger Corp.*, 701 F. Supp. 2d 556, 562 (S.D.N.Y. 2010) (internal

---

[3]  NewMarket does not have a saleable product because it refused to pay valid invoices, which led VetPharm to terminate the parties' Master Services Agreement for cause in March 2017, almost a full year after the events at issue in NewMarket's misrepresentation claims.

9

quotation marks omitted). NewMarket's conclusory allegation that VetPharm owed it a duty of care simply because the parties had a contract (Compl. ¶ 94; Opp. 17) is insufficient. Even if such a duty existed, the vague allegations in NewMarket's complaint fail to plausibly allege how VetPharm breached its duty of care or how the breach proximately caused an injury to NewMarket.

NewMarket's suggestion that it was injured when VetPharm terminated the Master Services Agreement and withheld the study data (Opp. 17) improperly conflates its alleged contract injury—stemming from NewMarket's expectation interest under the agreement—with a tort injury based on an alleged breach of a duty of care. NewMarket has not alleged, and cannot allege, facts sufficient to connect the dots between VetPharm's alleged statements to VetBridge about "the data" and any cognizable injury to NewMarket.[4]

**VII. NewMarket should not be given any further attempts to replead.**

NewMarket's one-sentence request to replead contains no detail on what further allegations it could, in good faith and consistent with Rule 11, add to a further amended pleading in order to overcome the fatal defects identified above. NewMarket has been put on notice of the defects in its claims since early April 2019, when VetPharm laid out these deficiencies in a letter. Foss Decl. Ex. 9. They were the subject of an earlier motion to dismiss that was fully briefed in the Western District of Missouri. Foss Decl. Exs. 10–12. NewMarket offers no reason why it should be given a third bite at the apple to try to plead a viable claim for relief. This Court should therefore dismiss NewMarket's complaint with prejudice.

## CONCLUSION

For the above reasons, VetPharm's motion should be granted.

---

[4] Because any negligence claim arising out of VetPharm's duties under the parties' Master Services Agreement would necessarily arise out of the same set of transactions and occurrences as the parties' arbitration proceeding, claim preclusion will bar NewMarket from proceeding on a negligence theory in this action based on any purported duty of care arising from the contract.

Dated: Pittsford, New York
      November 27, 2019

Respectfully submitted,

**HARRIS BEACH PLLC**

By:  */s/ Douglas A. Foss*
    Douglas A. Foss
    Kyle D. Gooch
    99 Garnsey Road
    Pittsford, NY 14534
    T: 585.419.8800
    F: 585.419.8801
    dfoss@harrisbeach.com
    kgooch@harrisbeach.com

*Attorneys for Defendant*